**Melvin DEVOST, Petitioner–Appellant,**

v.

**Cecil M. DAVIS, Respondent–Appellee.**

No. 03–2972.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 9, 2004.*

Decided March 17, 2004.

Melvin Devost, Bunker Hill, IN, pro se.

Daniel J. Kopp, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before POSNER, EASTERBROOK, and WILLIAMS, Circuit Judges.

Order

Melvin Devost sent outgoing mail from his prison in Indiana using a fictitious

---

\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is sub-

mitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f).

name and inmate number, and to a fictitious addressee. He did this to disguise the fact that the mail was intended for a guard, and its objective was to carry on a romantic relationship, something prohibited under prison rules. When some letters were intercepted, and the true sender identified, the guard resigned and Devost was charged with forgery. That offense transgresses prison rules that forbid the commission of any crime. A conduct board found that he had committed this offense, but on an administrative appeal the charge was reduced to "attempted forgery" because the rule concerning obedience to the criminal law governs only when no more-specific rule applies, and the prison system directly condemns attempted forgery as a "Class B" infraction. Indiana has deducted 180 days of Devost's earned-time credit and demoted him from credit class II to credit class III. The district court denied his petition for relief under 28 U.S.C. § 2254.

Devost contends on appeal that the state's decision violated the due process clause of the fourteenth amendment because the record does not demonstrate that he committed either actual or attempted forgery. A disciplinary action that increases the time a prisoner spends in custody must be supported by "some evidence," see *Superintendent of Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), and if, as Devost believes, the crime of "forgery" in Indiana is limited to the falsification of some instrument (such as a check) having a monetary value, then there is no evidence at all of his culpability. The supposition that the state offense is limited to commercially valuable documents is not accurate, however. According to Ind.Code 35–43–5–2, forgery occurs when:

A person who, with intent to defraud, makes or utters a written instrument in such a manner that it purports to have been made:

(1) By another person;

(2) At another time;

(3) With different provisions; or

(4) By authority of one who did not give authority . . .

Devost concedes that he attempted to deceive the prison officials so that he could communicate with the guard. The purported to have been made by a person other than Devost. This makes it vital to know whether a letter can be a "written instrument". That is a defined term: it means "a paper, document or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, . . . or other objects or symbols of value, right, privilege, or identification". Ind. Code § 35–43–5–1.

Indiana's legal theory, at last articulated when we called for supplemental memoranda, is that the "written matter" Devost placed on the envelopes made false claims of "identification" for purposes of this definition. This is a contestable reading of the statute; the reference to "identification" could be limited to documents, such as drivers' licenses and firearm cards, designed to identify their bearers. But *Thornton v. State*, 636 N.E.2d 140 (Ind. App.1994), gave the word a broad reading and held that a person commits the crime of "forgery" when he signs someone else's name to a fingerprint card. The court treated the "identification" not as the fingerprints, but as the name that would be associated with them. Even *Thornton* does not necessarily carry the day for the state; the bogus name was affixed to a document that later would play a role in identification, while Devost attached a bogus name to a document that was not

designed to identify anyone. But *Hill* does not hold that the state's understanding of the law and its application to the prisoner's circumstances must be *correct; Hill's* "some evidence" standard is weaker than the rule of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which governs collateral review of state criminal convictions. Collateral review is not a form of direct appellate review. It is enough that the state's view be plausible. Given *Thornton,* the state's view of Devost's activities has some support in both the law and the facts. We add that, even if this were incorrect, the state still would have been authorized to deduct 90 days of credits, for abuse of the mail system is a "Class C" infraction for which a 90–day deduction, and a reduction of one credit-earning class, are permissible sanctions. The state's understanding of *Thornton'*s effect is sufficiently plausible that the extra 90 days cannot be deemed a violation of the federal Constitution.

AFFIRMED